ROBERT C. SCHUBERT S.B.N. 62684
JUDEN JUSTICE REED S.B.N. 153748
AARON H. DARSKY S.B.N. 212229
SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, California 94111
Telephone: (415) 788-4220
Fax: (415) 788-0161

THOMAS J. MCKENNA
GAINEY & MCKENNA
485 Fifth Avenue
New York, New York 10017
Tel: (212) 983-1300
Fax: (212) 983-0383
*Attorneys for the Derivative Plaintiff*

ARB

BZ

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

C 04 4419

| | |
|---|---|
| HENRY RAMSEUR, Derivatively on behalf of Callidus Software, Inc, A Delaware Corporation, | |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | |
| GEORGE JAMES, R. DAVID SPRENG, TERRY L. OPDENDYK, MICHAEL A. BRAUN, JOHN R. EICKHOFF, CHRISTOPHER W. CABRERA and REED D. TAUSSIG | |
| Defendants, | **JURY TRIAL DEMANDED** |
| *-and-* | |
| CALLIDUS SOFTWARE, INC., A Delaware Corporation, | |
| Nominal Defendant. | |

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

1    Plaintiff, by his undersigned attorneys, for his shareholder derivative complaint, alleges upon

2    information and belief, except as to allegations about himself, which are based upon personal

3    knowledge, as follows:

4                                        **NATURE OF ACTION**

5         1.      This is a shareholder's derivative action brought on behalf of nominal defendant

6    Callidus Software, Inc. ("Callidus" or "the Company"), a Delaware corporation with its

7    headquarters and principal place of business at 160 West Santa Clara Street, Suite 1500, San Jose,

8    California 95113. In this action, plaintiff, on behalf of Callidus, alleges that defendants, who are

9    officers and/or directors of the Company, damaged Callidus by deliberately, in bad faith or

10   recklessly: (i) causing the Company to issue false and misleading statements to the market regarding

11   the Company's earnings guidance and expected revenues; (ii) exposing the Company to massive

12   liability for securities fraud; (iii) damaging the Company's reputation: and (iv) trading Callidus

13   shares while in possession of material, non-public information regarding the true financial condition

14   of the Company.

15        2.      On June 23, 2004, Callidus announced that the Company would not meet its second

16   quarter (and year end) financial targets and that Company Chairman, President, and CEO Reed

17   Taussig had been replaced.  Prior to disclosing these adverse facts, defendants caused Callidus to

18   sell millions of shares in its initial public offering and certain insiders sold over $1.8 million of their

19   holdings of Callidus shares the week the IPO lock-up expired. When the market opened for trading

20   following the June 23, 2004 announcement, shares of the Company's stock fell as low as $5.01 per

21   share, a decline of $10.08 per share or 69% over its Relevant Period high of $16.09.  As alleged in

22   detail herein, these revelations have severely damaged Callidus.

23        3.      Defendants' conduct was deliberate and undertaken in bad faith, and constituted

24   breaches of their fiduciary duties to the Company. The acts and omissions alleged herein occurred

25   during the period between January 22, 2004 and June 23, 2004, inclusive (the "Relevant Period").

26   By making Callidus appear more successful than it actually was, defendants secured their positions

27   as officers and/or directors of a public company, as well as their continued lucrative employment

28   and incentive-based cash and stock compensation. Defendants were also motivated by the desire to

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

1   sell their personal holdings of Callidus stock and increase and maintain the value of their substantial

2   personal holdings of Callidus shares.

### JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction over this action pursuant to pursuant to 28

U.S.C. Section 1332.  Pursuant to the Federal Rule of Civil Procedure 23.1, plaintiff alleges that this

action is not a collusive one to confer jurisdiction on a court of the United States which it would not

otherwise have.

5.      Venue is proper in this Judicial District because many of the acts and transactions

alleged herein occurred in substantial part in this judicial district.

### PARTIES

6.      Plaintiff Henry Ramseur held Callidus shares during the Relevant Period, and

continues to hold Callidus shares. Plaintiff is a citizen of Florida.

7.      Nominal Defendant Callidus is a Delaware corporation and maintains its principal

executive offices at 160 West Santa Clara Street, Suite 1500, San Jose, California 95113.  According

to its public statements, Callidus is a purported leader in Enterprise Incentive Management ("EIM")

solutions for managing incentive compensation and commission systems while aligning and

focusing business activity toward the goal of profit.  Callidus Software's EIM is built on the ability

to provide compensation and performance management for an enterprise's three key constituents:

sales, channel, and employees.  Large enterprises use EIM systems to model, administer, analyze

and report on incentive compensation or pay-for-performance plans that compensate employees and

business partners for the achievement of targeted quantitative and qualitative objectives, such as

sales quotas, product development milestones and customer satisfaction.  The Company provides a

suite of software products that enable companies to access applicable transaction data, allocate

compensation credit to employees and business partners, determine compensation measurements,

payment amounts and timing and report on compensation results.  Callidus trades on the NASDAQ

National Market System with approximately 24,037,834 shares outstanding.

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

8.     Defendant George James ("James") has served as a director of the Company since May 1999. James is also the Chairman of the Audit Committee, the Lead Independent Director, and a member of the Nominating and Corporate Governance Committee. As a member of the Company's Audit Committee, defendant James knew of the adverse information about Callidus's business prospects. James is a citizen of California.

9.     Defendant Terry L. Opdendyk ("Opdendyk") has served as a director of the Company since September 2002. Opdendyk is the Chairman of the Nominating and Corporate Governance Committee, which among other duties is charged with developing the Company's Code of Business Conduct that includes a prohibition on insider trading. Opdendyk violated that code when, during the Relevant Period, he sold 249,967 shares of stock for over $1.75 million in proceeds while in possession of material adverse inside information regarding the Company's financial results and future business prospects. Opdendyk currently serves as chairman of ONSET Venture Services Corporation and is a general partner or managing director of a number of entities that are general partners of various venture capital funds known collectively as ONSET Ventures ("Onset"). Onset owns 12.4% of Callidus and defendant Opdendyk is the Onset representative with authority to vote Onset's shares of Callidus. Opdendyk has been with Onset since he founded it in 1984. Opdendyk is a citizen of California.

10.     Defendant R. David Spreng ("Spreng") has served as a director of the Company since February 2003. Spreng is also a member of the Compensation Committee. Spreng has served as the managing general partner of Crescendo Venture Management ("Crescendo") since September 1998. Crescendo owns 9.79% of Callidus. Spreng is the son-in-law of director and audit committee member John Eickhoff, who is also a defendant in this action. Spreng is a citizen of California.

11.     Defendant Michael A. Braun ("Braun") has served as a director of the Company since February 2000. On June 23, 2004, after defendant Taussig's resignation, Braun was appointed Chairman of the Board. Braun is also the Chairman of the Compensation Committee, a member of the Audit Committee, and as of March 2004 owned 64,500 shares of Callidus stock. As a member of the Company's Audit Committee, defendant Braun knew of the adverse information about Callidus's business prospects. Braun is a citizen of California.

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

1    12.    Defendant John R. Eickhoff ("Eickhoff") has served as a director of the Company

2   since November 2003 and is also a member of the Audit Committee.  As a member of the

3   Company's Audit Committee, defendant Eickoff knew of the adverse information about Callidus's

4   business prospects.  Eickhoff has served as chief financial officer for the Ceridian Corporation since

5   1993 and has been a Ceridian employee for 40 years.  Eickhoff is the father-in-law of defendant

6   Spreng.  Eickhoff is a citizen of Minnesota.

7    13.    Defendants James, Opdendyk, Spreng, Braun and Eickhoff are sometimes

8   collectively referred to as the "Director Defendants."

9    14.    Defendant Reed D. Taussig ("Taussig") served as President, Chief Executive Officer

10   and Director of the Company during the Relevant Period.  Many of the false and misleading

11   statements regarding the Company's business prospects can be attributed directly to him.  On June

12   23, 2004, Taussig resigned as President, Chief Executive and Director of the Company.  As of

13   March 2004, Taussig owned approximately 730,000 shares of the Company's common stock.

14   Taussig is a citizen of California.

15    15.    Defendant Christopher W. Cabrera ("Cabrera") has served as Senior Vice President

16   of Operations during the Relevant Period. According to the Company's website, Cabrera has been

17   responsible for the company's worldwide sales strategy and execution since 2000.  During the

18   Relevant Period, Cabrera sold 15,000 shares of stock for over $105,000 while in possession of

19   material adverse inside information regarding the Company's business prospects. Cabrera is a

20   citizen of California.

21    16.    Defendants Opdendyk and Cabrera are sometimes collectively referred to as the

22   "Insider Trading Defendants."

23    17.    The Director Defendants and defendants Taussig and Cabrera are sometimes

24   collectively referred to as "the Individual Defendants."

25    18.    Each of the Individual Defendants, by virtue of his management and/or directorship

26   positions, had the duty to exercise due care and diligence and the duty of full and candid disclosure

27   of all material facts related thereto. As corporate fiduciaries, the Individual Defendants were

28   required to exercise reasonable care and prudent supervision of the Company, including assuring the

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

1  dissemination of truthful information concerning the business, operations, and earnings guidance of

2  Callidus.

3  19.    The Individual Defendants likewise had a duty of loyalty to the company to act in the best

4  interests of the company and its shareholders.  To discharge their duties, the officers and directors of

5  Callidus were required to exercise reasonable and prudent supervision over the management,

6  policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the

7  officers and directors of Callidus were required to, among other things:

8         (a)    refrain from acting upon material inside corporate information to benefit

9  themselves;

10        (b)    ensure that the Company complied with its legal obligations and

11  requirements, including acting only within the scope of its legal authority and disseminating truthful

12  and accurate statements to the SEC and the investing public;

13        (c)    conduct the affairs of the Company in an efficient, business-like manner

14  so as to make it possible to provide the highest performance of its business, to avoid wasting the

15  Company's assets, and to maximize the value of the Company's stock;

16        (d)    properly and accurately guide investors and analysts as to the true financial

17  condition of the Company at any given time, including making accurate statements about the

18  Company's financial results and prospects, and ensuring that the Company maintained an adequate

19  system of disclosure controls such that the Company's public statements would be true and accurate

20  at all times;

21        (e)    remain informed as to how Callidus conducted its operations, and, upon

22  receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable

23  inquiry in connection therewith, and to take steps to correct such conditions or practices and make

24  such disclosures as necessary to comply with federal and state securities laws; and

25        (f)    ensure that the Company was operated in a diligent, honest and prudent

26  manner in compliance with the applicable federal, state and local laws, rules and regulations.

27  20.    Each of the Individual Defendants directly participated in the management of the

28  Company and/or was involved in drafting, producing, reviewing and/or disseminating the false and

1  misleading statements alleged herein, and/or was aware that the false and misleading statements

2  were being issued regarding the Company's financial position and approved or ratified these

3  statements.

4      21.    Because of each of the Individual Defendants' positions with Callidus, each knew

5  and had access to non-public information about the business of Callidus, as well as its finances,

6  markets, and present and future business prospects, via access to internal corporate documents

7  (including Callidus's operating plans, budgets and forecasts, and reports of actual operations

8  compared thereto), conversations and connections with other corporate officers and employees,

9  attendance at management and/or board of directors' meetings and committees thereof, and reports

10 and other information provided to him in connection therewith.

11     22.    The Individual Defendants, as corporate fiduciaries entrusted with non-public

12 information, were obligated to disclose material adverse information regarding Callidus or to abstain

13 from trading on such information.

14     23.    Each Individual Defendant, by virtue of his position as director and/or officer, owed

15 to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of

16 due care and diligence in the management and administration of the affairs of the Company, as well

17 as in the use and preservation of its property and assets. The conduct of the Individual Defendants

18 complained of herein involves a reckless or deliberate violation of their obligations as directors and

19 officers of Callidus, the absence of good faith on their part, and a reckless disregard for their duties

20 to the Company and its shareholders that the Individual Defendants were aware or should have been

21 aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who

22 were also officers and/or directors of the Company during the Relevant Period has been ratified by

23 the remaining Individual Defendants who collectively comprised a majority of the Callidus Board

24 during the Relevant Period.

25

26

27

28

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

## SUBSTANTIVE ALLEGATIONS

24.    On January 22, 2004, defendants caused the Company to file a press release which touted the Company's record fourth quarter 2003 earnings.  In addition, the press release provided the following guidance for the current quarter:

> Guidance
>
> Calendar year 2004 total revenues are projected to be between $95 million and $100 million.
>
> Calendar year 2004 earnings per share is projected to be between $0.08 and $0.16 on a GAAP basis and non-GAAP earnings per share is projected to be between $0.22 and $0.28. Diluted weighted average shares outstanding for 2004 is estimated to be 29.3 million shares.
>
> *First quarter 2004 total revenues are projected to be between $20 million and $22 million.*
>
> First quarter 2004 earnings per share, on a GAAP basis, is projected to be between a loss of ($0.05) and ($0.02) and non-GAAP earnings per share, excluding stock-based compensation charges, but giving effect to an effective tax rate of 26%, is projected to be between $0.01 and $0.03. Diluted weighted average shares outstanding for the first quarter of 2004 is estimated to be 28.9 million shares. [emphasis supplied]

25.    On March 28, 2004, defendants caused the Company to issue a press release entitled "Callidus Software Revises Revenue and Earnings Outlook For the First Quarter 2004." The press release stated in part:

> Callidus Software Inc., the leader in Enterprise Incentive Management (EIM) software systems, today revised its outlook for the first quarter ending March 31, 2004.
>
> The Company expects total revenues for the first quarter of 2004 to be between $16.5 million and $18.0 million due to a shortfall of license revenues.  As a result Callidus anticipates a net loss for the quarter on both a GAAP and non-GAAP basis.  The Company expects to end the quarter with approximately $75 million of cash and investments.

1
2
3
4
5
6
7
8

"Callidus Software, like many enterprise software companies, transacts a significant portion of its quarterly business at the end of each quarter," stated Reed Taussig, president and CEO of Callidus Software. "Our quarterly license revenues are dependent on a relatively small number of large transactions involving sales of our products to customers, and any delay or failure in closing one or more of these transactions could adversely affect our results of operations. In this quarter, we failed to close several transactions due to customers' merger and acquisition activities. In addition, a number of customers failed to conclude contracts due to their timing or budgetary considerations. We are disappointed with these results. However, we continue to be optimistic about our business, given the potential of the emerging EIM market, our product position, and our strong customer base. We will address second quarter and full year guidance on our planned April conference call."

9
10
11
12

26.     The market reacted severely to the Company's revised guidance. On Friday, March 26, 2004 Callidus shares closed at $13.68 per share. On Monday, March 29, 2004, after the bad news was disclosed to the market, Callidus shares closed at $8.79, a one-day decline of 36% on trading volume 10 times greater than usual.

13
14
15
16
17
18
19
20
21

27.     On April 21, 2004, defendants caused the Company to issue a press release announcing its earnings for the first quarter of 2004 and earnings guidance for the second quarter of 2004. The Company fell significantly short of earning the $20-22 million projected on January 22, 2004, reporting earnings of $16.5 million, at the bottom end of the Company's revised guidance. The release also mentioned that the IPO lock-up would expire on May 18, 2004 and Company insiders would be permitted to exercise their options and sell Callidus shares. In an attempt to keep Callidus's stock price from sinking lower before the expiration of the IPO lock-up, the defendants caused the Company to issue guidance indicating revenues would return to previously forecast levels:

22

Guidance

23
24
25

*Second quarter 2004 total revenues are expected to be approximately $21.0 million. License revenues are expected to be about $9.0 million.*

26
27
28

Second quarter 2004 net loss per share, on a GAAP basis, is projected to be approximately ($0.08) and non-GAAP net loss per share, excluding stock-based compensation, is expected to be approximately ($0.01), equal to the current consensus. Basic and diluted weighted average shares outstanding for the second quarter of 2004 is estimated to be 24.3 million shares.

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For the full year 2004, total revenues are expected to be approximately $84 million. Net loss per share is expected to be approximately ($0.23) on a GAAP basis and break-even on a non-GAAP basis. Basic and diluted weighted average shares outstanding for the full year 2004 is estimated to be 24.7 million shares.

*IPO Lock-up Expiration*
*An estimated 18.3 million shares of common stock will be released from IPO lock-up provisions and will be available to be traded beginning on May 18, 2004. Additionally, an estimated 2.2 million shares of stock options will be exercisable and available to be traded on May 18, 2004* [emphasis supplied]

28.     On May 18, 2004, the very first day of the IPO lock up expiration, the Insider Trading Defendants began selling shares of Callidus.  Within eight days, the Insider Trading Defendants had liquidated 264,967 shares of Callidus stock, reaping proceeds in excess of $1.86 million.

## THE TRUTH EMERGES

29.     On June 24, 2004, before the market opened, the Company issued a press release entitled "Callidus Says CEO Resigns; Warns on Results."  The press release stated in part:

Callidus Software, Inc. said on Thursday its chairman and chief executive resigned, and *it warned that second-quarter and full-year results would not meet its financial targets.*

The business software maker said Reed Taussig had resigned as president, CEO and chairman of the board.  It named board member David Pratt as interim president and CEO, and Michael Braun as chairman of the board. *The company said it would not meet its quarterly and full year targets outlined in April, and said it was not providing revised estimates.* [emphasis supplied].

30.     As a result of this announcement, Callidus's stock price plummeted from its June 23, 2004 closing price of $6.81 to $5.01 on June 24, 2004, a one-day decline of 26% on extremely high trading volume.

31.     Callidus's financial performance for the second quarter of 2004 was so poor that its revenues were significantly less than those from the same quarter in 2003.  Instead of achieving the publicly forecasted total revenue of $21 million and $9 million in license revenues, the Company

1   actually earned $13.2 million in total revenues (63% of forecast) and $1.9 million in license

2   revenues (21% of forecast).

### THE DIRECTOR DEFENDANTS' RESPONSIBILITY FOR THE ACCURACY OF ITS PUBLICLY REPORTED FINANCIAL PROJECTIONS

32.   All of the Director Defendants had the responsibility to ensure that there existed at

Callidus sufficient internal controls to maintain the accuracy of its financial projections. Defendants

James, Eickhoff and Braun, in particular, as members of the Audit Committee during the Relevant

Period, had the responsibility to ensure that Callidus had sufficient accounting controls to insure the

accuracy of its projected financial results. According to the Company's Audit Committee Charter, as

amended on April 7, 2004:

> The Audit Committee shall review, in conjunction with management, *the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance*, provided to analysts and rating agencies, including in each case the type and presentation of information to be disclosed and paying particular attention to the use of non-GAAP information.

> *The Chairman of the Audit Committee shall review any of the Company's financial information and earnings guidance provided to analysts and ratings agencies*, and may review any of the Company's other financial disclosure, such as earnings press releases, as the Chairman deems appropriate.

> *The Audit Committee shall, in conjunction with the CEO and CFO of the Company, review the Company's internal controls and disclosure controls and procedures, including whether there are any significant deficiencies in the design or operation of such controls and procedures, material weaknesses in such controls and procedures,* any corrective actions taken with regard to such deficiencies and weaknesses and any fraud involving management or other employees with a significant role in such controls and procedures. [emphasis supplied]

33.   As members of the Audit Committee, defendants James, Eickhoff and Braun had the

responsibility to insure that the Company's financial projections and earnings guidance were based

on sound methodology and were not susceptible to fraud or material weakness. Defendant James is

specifically charged with reviewing the Company's guidance. After the first quarter of 2004

reported earnings were substantially below guidance, resulting in a one-day 36% drop in stock

value, the audit committee was unquestionably on notice that something was wrong with the way

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

the Company's guidance was being calculated and/or disseminated. Yet the Audit Committee permitted the defendants to issue even more outrageous, inaccurate guidance for the second quarter 2004, in direct breach of their fiduciary duties to the Company.

34.     Due to the Director Defendants' total abdication of their duties as members of the Board and/or the Audit Committee, they permitted material weaknesses in the Company's disclosure control structure such that the Company improperly forecasted revenue and issued those forecasts in misleading public statements.

## INSIDER TRADING ALLEGATIONS

35.     As a result of defendants' false and misleading statements, Callidus's stock traded at artificially inflated levels through the Relevant Period. The Insider Trading Defendants knew or recklessly disregarded that earnings guidance for the first and second quarters of 2004 was grossly inflated and that the Company would not realize earnings in the second quarter of 2004 anywhere close to the current guidance.

36.     Notwithstanding their access to this information as a result of their status as directors and/or officers of the Company and their corresponding duty either to refrain from trading or to disclose the adverse material facts set forth herein, the Insider Trading Defendants sold Callidus shares at artificially inflated prices while in possession of material, nonpublic information. Thus insider trading during the Relevant Period is summarized below:

| Name | Date | No. Shares Sold | Avg. Price | Approx. Proceeds |
|------|------|-----------------|------------|------------------|
| Christopher W. Cabrera | 5/18/04 | 15,000 | $7.00 | $105,000 |
| Terry Opdendyk | 5/18/04 | 94,967 | $6.96 | $660,970 |
| | 5/20/04 | 68,100 | $7.08 | $481,807 |
| | 5/24/04 | 7,000 | $7.00 | $49,000 |
| | 5/25/04 | 63,000 | $7.08 | $445,725 |
| | 5/28/04 | 16,900 | $7.10 | $119,990 |
| Opdendyk subtotal | | 249,967 | | $1,757,492 |
| Totals | | 264,967 | | $1,862,492 |

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

**DERIVATIVE ACTION ALLEGATIONS**

37. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23.1 on behalf of Callidus to enforce the claims of Callidus against the Individual Defendants, which may properly be asserted by Callidus and which Callidus has failed to enforce.

38. The wrongs complained of herein occurred during the Relevant Period, during which time plaintiff was a Callidus shareholder. Plaintiff continues to hold his shares in Callidus. Hence, plaintiff has standing to bring this derivative action on behalf of Callidus to recover damages for all of the conduct described in this complaint.

39. Plaintiff will fairly and adequately protect the interests of Callidus and its shareholders in enforcing the rights of Callidus against the Individual Defendants. Plaintiff's attorneys are experienced in this type of litigation and will prosecute this action diligently on behalf of Callidus to insure the rights of the Callidus. Plaintiff has no interests adverse to Callidus.

**THE INDIVIDUAL DEFENDANTS HAVE DAMAGED CALLIDUS**

40. By reason of their positions as fiduciaries of Callidus and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed to Callidus fiduciary obligations of fidelity, trust, loyalty and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner, and were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each defendant owed to Callidus a fiduciary duty to exercise due care and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of good faith and fair dealing.

41. In addition, as officers and/or directors of a public company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, services, management, projections and forecasts so that the market price of the Company's common stock would be based, at all pertinent times, on truthful and accurate information.

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

42.     The Individual Defendants either directly participated in the decisions to release the false and misleading press releases and guidance complained of herein, and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially misleading nature, or knew or were reckless in not knowing that such violations were occurring, and took no action to prevent or remedy the situation.

43.     Defendants caused Callidus to engage in a course of conduct which was designed to and did artificially inflate the market price of Callidus' securities and deceive the investing public regarding Callidus' financial condition and business prospects. Defendants undertook this scheme to prolong the appearance of good fortune at Callidus, profit personally by trading while in possession of material, non-public information concerning the true financial condition of the Company, and maximize the value of their substantial personal holdings of Callidus stock.

44.     Defendants either knew or were reckless in not knowing that the illegal acts and practices and misleading statements and omissions described herein would adversely affect the integrity of the market for Callidus' securities and would artificially inflate the prices of those securities. Callidus's stock reached over $16 per share during the Relevant Period, yet was trading at approximately $5 per share after the truth regarding the Company's false guidance was finally disclosed.

45.     Defendants, by acting as alleged herein, in bad faith exposed Callidus to massive liability under the federal securities laws. As a result of the dissemination of the false and misleading statements described herein, the market price of Callidus' stock was artificially inflated. That has resulted in the Company being subjected to numerous class action lawsuits brought in the United States District Court for the Northern District of California on behalf of purchasers of Callidus securities during the time the Company was disseminating the above quoted false information ("the Class Actions").

46.     Callidus has been damaged by its exposure to multi-million dollar damages claims by the members of the classes in the Class Actions, as well as to the substantial legal and other professional expenses to be incurred in connection with the Class Actions. As a direct result of

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

1  certain defendants' wrongful conduct and violations of the federal securities laws, Callidus has been

2  forced to expend significant sums of money.

3      47.    In addition, the Company's reputation in the securities markets has been severely

4  damaged, thereby hampering the Company's ability to secure future business partners and financing.

## DEMAND IS EXCUSED FOR FUTILITY

7      48.    Demand on Callidus to bring this action has not been made and is not necessary

8  because such demand would be futile. Callidus is controlled by its Board of Directors. As described

9  herein, the Director Defendants, constituting six of the Company's seven current directors were

10  actively involved in, knew or recklessly disregarded the adverse non-public material facts regarding

11  Callidus alleged herein, and/or illegally profited from the misconduct. The Director Defendants, due

12  to their participation in the wrongful acts alleged and their potential individual financial exposure,

13  are not disinterested and cannot exercise independent business judgment on the issue of whether

14  Callidus should prosecute this action. As a result, demand on Callidus and its Board of Directors is

15  futile and therefore excused.

16      49.    Among the facts demonstrating the futility of demand are the following:

17      (a)    Defendant James, as chairman of the audit committee and lead independent director,

18  by the terms of the audit committee charter, was directly responsible for reviewing the Company's

19  earnings guidance, and therefore was directly responsible for the acts and omissions described

20  herein, including but not limited to the false and misleading statements and omissions of material

21  facts made in Callidus public statements regarding earnings guidance.

22      (b)    Defendant Opdendyk sold thousands of shares of Callidus stock while in possession

23  of material adverse inside information that the Company had publicly overstated its expected second

24  quarter 2004 revenue and that the price of the Callidus stock was therefore artificially inflated. Thus,

25  Opdendyk benefited from the artificial inflation his misconduct had created, in breach of his

26  fiduciary duties of loyalty to Callidus and its shareholders. As chairman of the corporate

27  governance committee, Opdendyk was responsible for the Company's code of business ethics,

28  including the Company's insider trading policies, which plaintiff alleges Opdendyk violated.

1 Opdendyk would never vote to investigate his own misconduct or to sue the Director Defendants for

2 their breaches of fiduciary duty.

3     (c)    None of the other Director Defendants did anything to prevent the insider trading

4 engaged in by defendants Opdendyk and Cabrera. These directors knew of the unlawful acts,

5 participated in the actions of their colleagues, and failed to prevent these breaches of the duty of

6 loyalty. These directors would never sue themselves or their colleagues to recover said insider

7 trading proceeds.

8     (d)    During the Relevant Period, the Company's Audit Committee consisted of

9 defendants James, Eickhoff and Braun. The audit committee should properly have been the keystone

10 of Callidus' corporate governance and finance. Instead, the Director Defendants, and defendants

11 James, Eickhoff and Braun in particular, failed to ensure that Callidus' Audit Committee was an

12 informed, vigilant and effective overseer of the Company's earnings guidance process and its

13 disclosure control systems. The Director Defendants either knew or should have known that

14 Callidus lacked an adequate system of disclosure controls. The service on the Audit Committee by

15 defendants James, Eickhoff and Braun was an utter sham in that they took no action whatsoever to

16 assure that such a system of disclosure controls was in place, as demonstrated by the Company's

17 progressively more inaccurate financial guidance for the first and second quarters of 2004.

18     (e)    The Audit Committee cannot fairly investigate the cause of the false financial

19 guidance announced on June 24, 2004. Defendants James, Eickhoff and Braun would have to

20 investigate themselves and their own failure to properly oversee and implement proper disclosure

21 controls. It defies logic that the Audit Committee members could perform an objective investigation

22 of their own misconduct. The absence of disclosure controls directly contributed to the false

23 earnings guidance alleged herein, and was the proximate cause of Callidus' exposure to massive

24 liability for violation of federal securities laws.

25     (f)    Callidus is and was controlled by its Board of Directors and as described herein, the

26 Director Defendants are ultimately responsible for the Company's financial reporting and earnings

27 guidance, and were all involved in the wrongs alleged. These wrongs have given rise to the Class

28 Actions, in which open market purchasers of Callidus stock have sued the Company and certain of

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

the directors and/or officers asserting claims under the federal securities laws. None of the Director Defendants is in a position to exercise independent business judgment with respect to the claims alleged herein due to his participation in and responsibility for the conduct giving rise to the Class Actions, which have damaged and will continue to damage Callidus.

(g)     Callidus has agreed to indemnify its directors and officers against liability for acts and omissions occurring in the performance of their duties as directors and officers and maintains insurance policies to cover the costs of such indemnification. Under the terms of those insurance policies, however, claims against directors which are brought by the Company, or other directors, are excluded from coverage. Therefore, Callidus' board, or any committee thereof, is effectively disabled from complying with any demand that would cause the Company to bring suit against the individual defendants because to do so would result in the loss of their insurance coverage.

(h)     In order to bring this action for breaches of fiduciary duty, the members of Callidus' Board would have to sue themselves, and/or their fellow directors and allies in the top ranks of the Company.  Defendants Eickhoff and Spreng are related by marriage;  Eickhoff is Spreng's father-in-law.  Spreng would never vote to sue his father-in-law for Eickhoff and the other audit committee members' failure to insure that an adequate system of disclosure controls existed.

### FIRST CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

50.     Plaintiff incorporates by reference the allegations set forth above.

51.     In violation of their fiduciary duties to Callidus and its shareholders, defendants issued false and misleading statements to Callidus' shareholders and the investing public regarding the Company's earnings guidance and business prospects throughout the Relevant Period. By reason of this conduct, defendants have exposed Callidus to potential liability in the Class Actions and the cost of defending such litigation. In addition, the Company's reputation in the securities markets has been severely damaged, thereby hampering the Company's ability to secure future business partners and financing.

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

52. Consequently, Callidus has been and is being further damaged by defendants' conduct in breach of their fiduciary duties.

## SECOND CAUSE OF ACTION

### GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

53. Plaintiff incorporates by reference the allegations set forth above.

54. The preparation and dissemination of quarterly and annual earnings guidance that were materially false and inaccurate represents a sustained and systematic failure by the Individual Defendants to assure the existence within Callidus of appropriate and adequate internal disclosure controls and a reasonable information and reporting system necessary to assure the accuracy of the Company's earnings guidance.

55. The breach by defendants of their duty to act with reasonable care was grossly negligent, reckless, and lacked a good faith effort by defendants to perform their fiduciary responsibilities.

56. Callidus has been damaged by defendants' gross negligence and reckless disregard of their duties.

## THIRD CAUSE OF ACTION

### BREACH OF CONTRACT AGAINST INDIVIDUAL DEFENDANTS

57. Plaintiff incorporates by reference the allegations set forth above.

58. In consideration of the substantial compensation and professional enhancement and prestige, which each of the defendants received as directors and/or officers of Callidus, each of those defendants contracted with Callidus to act in the best interest of Callidus and to cause Callidus to operate lawfully and properly.

59. Each defendant named as a Callidus officer had a written contract with Callidus which he breached by his actions, as set forth herein. Each of the Director Defendants also had an express agreement to serve as a director of the corporation in exchange for compensation, which each Director Defendant breached by his actions herein.

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

60.     By their actions and omissions set forth herein those defendants reached their contractual obligations and commitments to Callidus by not acting in the best interests of Callidus and causing or permitting Callidus to act in unlawful and improper ways.

61.     Callidus has been damaged by defendants' breach of their contracts.

## FOURTH CAUSE OF ACTION

### BREACH OF DUTY OF LOYALTY-INSIDER TRADING-AGAINST THE INSIDER TRADING DEFENDANTS

62.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

63.     By reason of their positions as directors and/or officers of Callidus during the Relevant Period, at the time the Insider Trading Defendants sold their Callidus shares, each had access to and knew highly material information regarding Callidus, and knew or should have known that the public disclosure of this information would adversely affect the market price of Callidus's stock.

64.     In selling their Callidus stock, as set forth above, the Insider Trading Defendants used Callidus' material, non-public information for personal gain, in breach of their fiduciary duties to Callidus and its shareholders.

65.     By reason of the aforesaid insider sales, the Insider Trading Defendants profited through their fiduciary positions. Defendants are obliged to disgorge these unlawful profits for the benefit of Callidus.

## FIFTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25402 AGAINST OPDENDYKE AND CABRERA

66.     Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs as though set forth fully herein.

67.     At the time that the Insider Trading Defendants sold their Callidus common stock, by reason of their executive and/or director positions with Callidus, these defendants had access to and

1  knew material information regarding Callidus, including the materially adverse information set forth

2  above. That information was not generally available to the public or to the securities markets, and

3  the defendants knew it was not available. Had such information been generally available, it would

4  have significantly reduced the market price of Callidus's shares.

5       68.     At the time that Opdendyke caused his and Onsets's Callidus common stock to be

6  sold, Opdendyke had access to and knew material nonpublic information regarding Callidus,

7  including the materially adverse information set forth above.

8       69.     In selling their shares with knowledge of material adverse non-public information,

9  defendants violated California Corporations Code Section 25402, and are therefore liable to Callidus

10  pursuant to California Corporations Code Section 25502.5(a) for damages in an amount equal to

11  three (3) times the difference between the prices at which said defendants sold their Callidus shares

12  and the market value which said shares would have had at the time of said sales if the material non-

13  public information known to said defendants had been publicly disseminated prior to that time and a

14  reasonable time had elapsed for the market to absorb the information. Plaintiff seeks those damages

15  on behalf of Callidus with respect to the sales of Callidus stock described herein, pursuant to

16  California Corporation Code Section 25502.5(a). Said defendants are further liable for plaintiff's

17  reasonable costs and attorneys' fees incurred.

18       70.     The acts of the Insider Trading Defendants, together and separately, constituted

19  willful and malicious breaches of their fiduciary duties to Callidus, and Callidus is therefore entitled

20  to an award of punitive damages, in an amount to be determined at trial.

21

22

23  **PRAYER FOR RELIEF**

24  **WHEREFORE,** plaintiff, on behalf of Callidus, demands judgment against defendants and

25  each of them jointly and severally as follows:

26       A.     Determining that this suit is a proper derivative action and certifying plaintiff as

27  appropriate representatives of Callidus for said action;

28

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

B.     Declaring that each of the Individual Defendants breached his fiduciary duty to Callidus;

C.     Determining and awarding Callidus the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with interest thereon;

D.     Awarding plaintiff the costs and disbursements of this action, including reasonable fees and costs to plaintiff's attorneys, accountants and experts;

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: October 18, 2004

By: _____
     Juden Justice Reed

ROBERT C. SCHUBERT
JUDEN JUSTICE REED
AARON H. DARSKY
SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, California 94111
Telephone: (415) 788-4220

Thomas J. McKenna
GAINEY & MCKENNA
485 Fifth Avenue
New York, New York 10017
Tel: (212) 983-1300

*Attorneys for Derivative Plaintiff*

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220

VERIFICATION

I, Juden Justice Reed, hereby declare:

1.    I am counsel for derivative plaintiff in the captioned matter. Derivative plaintiff is absent from the county where this action is pending and from the county in which I maintain my offices, and for that reason I am making this verification for and on his behalf.

2.    I have read the foregoing Shareholder's Derivative Complaint and know its contents. I am informed and believe and on that ground allege that the matters stated therein are true and correct.

Executed this 18th day of August, 2004, in San Francisco, California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Juden Justice Reed

SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA 94111
(415) 788-4220